## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C. and SLING TV L.L.C., | ) ) ) |
| Plaintiffs, | ) ) |
| | ) Civil Case No. _____ |
| v. | ) ) |
| MAULIK SHAH and MANC INC., | ) ) ) |
| Defendants. | ) ) ) |

## **PLAINTIFFS' COMPLAINT**

Plaintiffs DISH Network L.L.C. and Sling TV L.L.C. file this action against Defendants Maulik Shah and Manc Inc. for violations of the anti-trafficking provisions of the Digital Millennium Copyright Act ("DMCA"). Defendants provide and profit from the sale of set-top boxes and illicit streaming services that capture and retransmit Plaintiffs' television programming, without authorization, by circumventing Plaintiffs' security measures.

## **PARTIES**

1. Plaintiff DISH Network L.L.C. ("DISH") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

2. Plaintiff Sling TV L.L.C. ("Sling") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

3. Defendant Manc Inc. is a corporation organized and existing under the laws of the State of Illinois, having its principal place of business located at 1817 Grosse Pointe Circle, Hanover Park, Illinois 60133.

4. Defendant Maulik Shah is an individual residing in Hanover Park, Illinois. Maulik Shah is the principal officer and director of Manc Inc. Upon information and belief, Maulik Shah operates Manc Inc. from his residence and makes the day-to-day decisions regarding the operation of the business, which he uses to process payments in connection with the set-top boxes and infringing services at issue.

## JURISDICTION & VENUE

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims for violations of the DMCA, 17 U.S.C. § 1201.

6. Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendants reside in Illinois and, through their wrongful conduct identified herein, Defendants purposefully directed their conduct towards and purposefully availed themselves of the privileges of conducting business in Illinois, causing injury to Plaintiffs in Illinois.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## PLAINTIFFS' PROGRAMMING

8. Plaintiffs provide television programming to millions of authorized, fee-paying subscribers of their Sling TV and DISH Anywhere services in the United States using the internet. Plaintiffs acquire the distribution rights to provide the programming pursuant to license agreements between DISH and various rights holders. The programming consists of live channels and on demand content and is subject to copyright protections. Plaintiffs' live channels, whether intended for Sling TV subscribers or DISH Anywhere subscribers, are transmitted over the internet using the same Sling streaming platform ("Channels").

9. Plaintiffs implement digital rights management ("DRM") technology, with the rights holders' consent, to protect the Channels from unauthorized access, copying and retransmission. Each DRM technology uses a key-based subscriber authentication and encryption-decryption process to make Plaintiffs' Channels accessible to only authorized subscribers that purchase access to the Channels from Plaintiffs and restricts unauthorized access to, copying, and retransmission of the Channels.

## DEFENDANTS' REBROADCASTING AND INFRINGEMENT SCHEME

10. Defendants trafficked in the set-top boxes ("STBs") and internet streaming television services ("Services") through their websites located at Streamingboxusa.com and Bulkboxx.com ("Websites") and through Amazon stores including informirusa and iPNetTV (collectively the "Amazon Stores"). Amazon identified Maulik Shah as the seller of the informirusa store and Manc Inc. as the seller of the iPNetTV store.

11. Defendants operated the Websites and Amazon Stores and processed the payments for the STBs and Services. The payments for the STBs and Services purchased from Defendants are made via Amazon, Zelle to Maulik Shah at shah.maulik42@gmail.com and at phone number 1-331-431-9220, Zelle to Manc Inc. at phone number 1-331-431-9220,[1] and CashApp to Maulik Shah at $mauliksh.

12. Defendants sold the STBs on the Websites and Amazon Stores for a cost of approximately $80 to $200, depending upon the hardware selected by the user. The STBs included stickers on the boxes directing users to contact Defendants at WhatsApp numbers for free Services.

---

[1] Phone number 1-331-431-9220 was used for Maulik Shah's receipt of Zelle payments prior to September 13, 2020 and used for Manc Inc's receipt of Zelle payments from September 13, 2020 to the present.

The following is a photo of a sticker on a box of an STB purchased from Maulik Shah through the informirusa Amazon Store:



Sticker on STB from informirusa Amazon Store

13. Upon receipt of the STBs, users message Defendants at the WhatsApp numbers on the stickers on the boxes and request a free trial of the Services. Defendants respond with instructions for setting up a free trial of the Services on the STBs.

14. After the free trials, Defendants sell the Services to users for a cost of approximately $10 per month or $110 per year.

15. Plaintiffs' Channels are being transmitted without authorization to users that purchase the STBs and Services from Defendants. Identifiers that are unique to Plaintiffs' internet transmissions of the Channels were detected when conducting a technical analysis of the corresponding channels on the Services, thereby confirming that channels transmitted on the Services originated from Plaintiffs. Periodic monitoring conducted on a sampling of channels on the Services showed numerous instances where Plaintiffs' Channels were being retransmitted to users of the Services without Plaintiffs' authorization. Plaintiffs' internet transmissions of the Plaintiffs' Channels on the Services include the following by way of example: BabyTV, Boomerang, TeenNick, Gusto, CNN, BBC World News, GAC Family, The Cowboy Channel, History, AMC +, FXX, Laff, Pursuit, VICE, Starz West, Showtime, Showtime Next, The

Longhorn Network, and the NBA channel for the Milwaukee Bucks, Chicago Bulls, Utah Jazz, Cleveland Cavaliers, Denver Nuggets, and Detroit Pistons.

16. Sling marks were also observed on several channels transmitted on the Services, further demonstrating that Plaintiffs' Channels were used to seed the Services with unauthorized content. For example, the following screenshots of the landing page for the NBA channel for the Chicago Bulls and Utah Jazz were captured from the Services, including the Sling marks. The NBA channels on the Sling service display these landing pages rather than scheduled programming when no NBA game is being broadcast.

 

NBA channel for Chicago Bulls from the Services   NBA channel for Utah Jazz from the Services

17. Upon information and belief, Plaintiffs' Channels are retransmitted to users of the Services by circumventing the Widevine DRM. The Widevine DRM controls access to Plaintiffs' Channels by requiring Plaintiffs' subscriber to present a valid digital authentication key and license request to Sling's Widevine DRM server to obtain the channel decryption key necessary to unlock a specific Channel. The channel decryption key is provided to Plaintiffs' subscriber in an encrypted communication and upon receipt is not exposed to the subscriber but rather is secured in the content decryption module of the subscriber's Widevine supported device. In addition, the Widevine DRM protects against copying of Plaintiffs' Channels in the ordinary course of its

operation by requiring that the encrypted audio-visual segments that make up a Channel are unlocked using the channel decryption key and complied to form the Channel within the confines of the content decryption module, such that Plaintiffs' subscribers can only view the Channel and not retransmit the Channel.

18. The Widevine DRM and the protection it affords is circumvented using a specially developed computer program that emulates the behavior of a reverse engineered hardware device. The computer program tricks Sling's Widevine DRM server to grant access and provide a channel decryption key by making the server believe the request originated from a legitimate Widevine supported device that would keep the channel decryption key secured (though in reality the request came from the computer program mimicking the reverse engineered hardware). The computer program uses the channel decryption key to unlock the encrypted audio-visual segments that make up the Channel and then compiles the segments to form an unencrypted Channel that is capable of being copied and retransmitted (as opposed to being merely viewed). The unencrypted Channel can be uploaded to a server outside of the Sling platform and retransmitted to any number of users that can receive the Channel without purchasing a legitimate subscription from Plaintiffs.

19. Upon information and belief, users of the Services are able to receive Plaintiffs' Channels because the Widevine DRM used to protect the Plaintiffs' Channels from unauthorized access and copying is being circumvented as described above. Additional content provided on the Services is believed to be acquired from other legitimate pay-television providers that use the Widevine DRM through this process of circumvention, which enables the Services to offer thousands of channels and tens of thousands of on-demand programs at a small fraction of the cost charged by legitimate providers that pay to license their content such as Plaintiffs.

20.     Defendants were notified that the Services violate federal laws and asked to cease and desist from providing the Services as early as June 6, 2023 and on June 28, 2023 and July 24, 2023, but Defendants failed to comply and the Services have continued to operate.  Defendants' sales of STBs and Services through Zelle payments alone have totaled more than $1,093,000, with more than $413,000 from sales after Defendants' were asked to cease and desist.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of the DMCA, 17 U.S.C. § 1201(a)(2)

21.     Plaintiffs repeat and reallege the allegations in paragraphs 1-20.

22.     Plaintiffs use DRM technology to effectively control access to their Channels that include works protected under the Copyright Act.  Plaintiffs are authorized by the copyright owners to control access to the Channels and implement the DRM technology with their consent.

23.     Plaintiffs' DRM technology is circumvented to gain access to Plaintiffs' Channels that are retransmitted without authorization to users of the Services.  Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Services.

24.     The Services, or at least the component or part of the Services that involves gaining unauthorized access to Plaintiffs' Channels, are primarily designed and produced for the purpose of circumventing the DRM technology that Plaintiffs implement and has no commercially significant purpose or use other than circumventing such DRM technology.

25.     Defendants violate 17 U.S.C. § 1201(a)(2) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services.  Each free trial and sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(a)(2).

26. Defendants' actions violating 17 U.S.C. § 1201(a)(2) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

27. Defendants' violations of 17 U.S.C. § 1201(a)(2) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

## COUNT II
## Violations of the DMCA, 17 U.S.C. § 1201(b)(1)

28. Plaintiffs repeat and reallege the allegations in paragraphs 1-20.

29. Plaintiffs use DRM technology to effectively control copying of their Channels that include works protected under the Copyright Act. Plaintiffs are authorized by the copyright owners to control copying of the Channels, including distribution and public performance through acts of retransmission, and implement the DRM technology with their consent.

30. Plaintiffs' Channels are retransmitted without authorization to users of the Services by circumventing Plaintiffs' DRM technology. Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Services.

31. The Services, or at least the component or part of the Services involving unauthorized retransmission of Plaintiffs' Channels to users of the Services, are primarily designed and produced for the purpose of circumventing the protection afforded by the DRM technology that Plaintiffs implement and has no commercially significant purpose or use other than circumventing such protection.

32. Defendants violate 17 U.S.C. § 1201(b)(1) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services. Each free trial and sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(b)(1).

33. Defendants' actions violating 17 U.S.C. § 1201(b)(1) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

34. Defendants' violations of 17 U.S.C. § 1201(b)(1) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(b)(1).

## **PRAYER FOR RELIEF**

Plaintiffs request a judgment against Defendants as follows:

A. For a permanent injunction, as authorized by Fed. R. Civ. P. 65 and 17 U.S.C. § 1203(b)(1), that prohibits Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with them that receives actual notice of the order, from:

    1. manufacturing, offering to the public, providing, or otherwise trafficking in the STBs, Services, or any other technology, product, service, device, component, or part thereof that:

        a. is primarily designed or produced for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

        b. has at best only limited commercially significant purpose or use other than circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

9

or

      c.    is marketed for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

B.    For an order transferring all domain names and websites that Defendants used in connection with the Services to Plaintiffs;

C.    For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations, or (2) statutory damages up to $2,500 for each violation, pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

D.    For an order awarding Plaintiffs their attorneys' fees and costs under 17 U.S.C. § 1203(b)(4)-(5);

E.    For an accounting of all profits and other benefits that Defendants received from the wrongful conduct identified in this complaint;

F.    For pre and post-judgment interest on all damages awarded by the Court, from the earliest date permitted by law at the maximum rate permitted by law; and

G.    For such additional relief as the Court deems just and equitable.

Respectfully submitted,

Dated: June 7, 2024              **LEWIN VERVENIOTIS LAW GROUP**

By: /s/ David M. Lewin
David M. Lewin
120 North LaSalle, Suite 2600
Chicago, IL 60602
Telephone: (312) 725-2084

**HAGAN NOLL & BOYLE LLC**
Stephen M. Ferguson (*pro hac vice* to be filed)

10

Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Attorneys for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.