**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DISH NETWORK L.L.C. and SLING TV L.L.C., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 24-cv-04745 |
| v. | ) ) | Judge Jeremy C. Daniel |
| MAULIK SHAH and MANC INC., | ) ) ) | Magistrate Jeffrey Cole |
| Defendants. | ) ) ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiffs DISH Network L.L.C. and Sling TV L.L.C., respectfully file this Reply in support of their Motion for Summary Judgment (Dkt. 19).

**I.     Introduction**

Defendants Maulik Shah and Manc Inc. filed a Response to Plaintiffs' Motion for Summary Judgment on January 29, 2025 (Dkt. 37, the "Response") that fails to comply with Local Rules, fails to rebut Plaintiffs' Statement of Undisputed Material Facts (Dkt. 19-2), is unsupported by any declaration or documents, and cites to one case. Plaintiffs' Motion for Summary Judgment should be granted.

**II.     Argument**

**A.     Defendants' Response Fails to Comply with Local Rule 56.1(b), (e), and (g) and The Court Should Accept Plaintiffs' LR 56.1(a)(2) Statement as Undisputed or Admitted**

Defendants were required to file "(1) a supporting memorandum of law that complies with LR 56.1(g); (2) a response to the LR 56.1(a)(2) statement of material facts that complies with LR 56.1(e) and that attaches any cited evidentiary material not attached to the LR 56.1(a)(2) statement; and (3) if the opposing party wishes to assert facts not set forth in the LR 56.1(a)(2) statement or the LR 56.1(b)(2) response, a statement of additional material facts that complies with LR 56.1(d)

and that attaches any cited evidentiary material not attached to the LR 56.1(a)(2) statement or LR 56.1(b)(2) response." Local Rule 56.1(b). Pursuant to requirement (1), Defendants' supporting memorandum of law "must set forth legal argument in . . . opposition to summary judgment and may include a statement of facts. When addressing facts, the memorandum must cite directly to specific paragraphs in the LR 56.1 statements or responses." Local Rule 56.1(g).

Despite having had an extra three weeks pursuant to Dkt. 32, Defendants' Response is three pages and fails to comply with Local Rules 56.1(b), (e), and (g). Defendants' Response fails to comply with LR 56.1(b)(1) and (g) because it does not cite to any specific paragraphs in Plaintiffs' LR 56.1 statement. Defendants' Response fails to comply with LR 56.1(b)(2), (3), and (e) because it does not respond to Plaintiffs' LR 56.1(a)(2) statement or attach any cited evidentiary material. As a result of Defendants' noncompliance with these Local Rules, the Court should accept Plaintiffs' LR 56.1(a)(2) Statement of Undisputed Material Facts (Dkt. 19-2) as undisputed or admitted for purposes of Plaintiffs' Motion. *See Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019)("According to well-established Seventh Circuit law, that noncompliance meant that the district court could exercise its discretion to accept [plaintiff's] statements of fact as undisputed."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015)("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.")

### B. Defendants Fail to Provide any Evidence Creating a Genuine Issue as to Any Material Fact

#### 1. Defendants Failed to Create a Genuine Issue of Material Fact as to Defendants' Trafficking in Services that Circumvent Plaintiffs' Security Measures

Defendants failed to create a genuine issue of material fact that they trafficked in the Services (SUMF 12, 16-21) or that Plaintiffs' Channels were distributed through Defendants' Services (SUMF 22). (*See* Dkt. 37 at 2.) Defendants also failed to create a genuine issue of material fact as to Plaintiffs' expert testimony that (1) in the ordinary course of the Widevine DRM's

operation, it controls access to Plaintiffs' Channels using a key-based subscriber authentication and encryption-decryption process and prevents, restricts, or otherwise limits copying of Plaintiffs' Channels (SUMF 7); (2) Plaintiffs' Channels are retransmitted to users of the Services by circumventing the access control feature of the Widevine DRM because, through the computer program that tricks the Sling Widevine DRM server to grant access to the channel decryption key, Plaintiffs' Channels are decrypted without authorization (SUMF 22, 24); (3) Plaintiffs' Channels are retransmitted to users of the Service by circumventing the copy control feature of the Widevine DRM because, through the computer program that uses the channel decryption key to unlock and compile each Channel, the Channels are distributed to servers outside the Sling platform, where the Channels are publicly performed to users of the Services that access them without having a legitimate subscription from Plaintiffs (SUMF 22, 25); (4) the process of acquiring channels for the Services is an essential component or part of the Services because without content there would be no Services (SUM 26); (5) Plaintiffs' Channels are accessed and retransmitted to users of the Services by circumventing Plaintiffs' DRM technology and its corresponding protections (SUMF 22, 24-25); and (6) the component or parts of the Services that involve accessing and retransmitting Plaintiffs' Channels to users of the Services, is primarily designed and produced for the purpose of circumventing the DRM technology implemented by Plaintiffs and the protections afforded by such technology, and has no other commercially significant purpose or use (SUMF 27). (*See* Dkt. 37 at 2.) Finally, Defendants' failed to dispute or create a genuine issue of material fact that Defendants made at least 9,901 sales of the Services that distributed Plaintiffs' Channels by circumventing Plaintiffs' security measures. (SUMF 19, 22; *see* Dkt. 37 at 2-3.)

## 2. Defendants Failed to Create a Genuine Issue of Material Fact that Defendants' Actions Were Willful

Defendants failed to create a genuine issue of material fact that (1) Defendants placed stickers on the boxes of the STBs that they sold offering free trials of the Services, activated the Services on the STBs, and provided their customers with instructions for setting up the Services on the STBs (SUMF 17, 20-21); (2) Defendants knew that Sling was the source of 24 Channels

3

that were distributed through the Services (SUMF 28); (3) Plaintiffs contacted Defendants on June 28, 2023 and July 24, 2023 regarding their infringing conduct and demanded that they immediately cease (SUMF 29-30); and (4) Defendants failed to respond to Plaintiffs' cease and desist demands and continued to sell at least 4,121 Services (SUMF 31-33). (*See* Dkt. 37 at 3.) These undisputed material facts establish that Defendants did not traffic in the Services by accident, it was willful, intentional, and for their own financial benefit.

Defendants cite to *Abbot Labs. v. Sandoz, Inc.* asserting willfulness is a question of fact and a finding of willfulness requires a showing of objective recklessness by presentation of clear and convincing evidence. 532 F. Supp. 2d 996, 998 (N.D. Ill. 2007); (Dkt. 37 at 3). However, *Abbot Labs* concerned willfulness in a patent infringement case and it is not the controlling law for Defendants' violations of the Digital Millennium Copyright Act ("DMCA").

"The Copyright Act does not define 'willful'; its determination is left for the trier of fact. A party therefore has a heavy burden when seeking reversal of a trial court's determination of willful copyright infringement: 'The district court's finding of willfulness is a factual determination that we cannot reverse unless clearly erroneous.'" *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) (quoting *International Korwin Corp., v. Kowalezyk*, 855 F.2d 375, 380 (7th Cir. 1988). "A finding of willfulness is justified 'if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right.'" *Id.* (quoting *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020 (7th Cir.)). "Willful blindness is knowledge, in copyright law." *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003). "[I]n determining whether the violation was willful, the trier of fact may consider evidence that the defendant ignored the plaintiff's notices about copyright protection, did not seek advice of an attorney, and passed the matter off as a nuisance." *Id.* (quoting *International Korwin Corp.*, 855 F.2d at 380-81). "Evidence that the notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness." *Id.* (quoting *Video Views,* 925 F.2d at 1021).

"A letter informing the defendant of possible infringement clearly provides notice." *Id.* (quoting *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1227 (7th Cir. 1991)).

Courts may grant summary judgment on the issue of willfulness where, as here, the defendants received warnings that their actions would likely result in infringement and they continued to infringe. (SUMF 28-33); *Microsoft Corp. v. Ram Distribution, LLC*, 625 F. Supp. 2d 674, 683 (E.D. Wis. 2008) (granting summary judgment finding defendants "decision to purchase from non-Microsoft authorized vendors, despite repeated warnings and an injunction, gives rise to an inference of willful conduct by the defendants. This inference is sufficient to establish 'willful infringement' under the Copyright Act"); *Broad. Music, Inc. v. CDZ, Inc.*, 724 F. Supp. 2d 930, 939 (C.D. Ill. 2010) (granting summary judgment finding defendants acted willfully in violating plaintiff's rights where they had been sent letters notifying them of the need for a license, were sent cease and desist orders, and still did not sign any license agreements); *see also Monster Energy Co. v. Zheng Peng*, No. 17-CV-414, 2017 WL 4772769, at *6 (N.D. Ill. Oct. 23, 2017) (granting summary judgment on issue of willfulness where defendants used marks and designs virtually identical to those of Monster Energy); *Columbia Pictures Indus., Inc. v. Mirza*, No. 91 C 2385, 1993 WL 118492, at *6 (N.D. Ill. Mar. 29, 1993) (granting summary judgment on willful infringement of copyright "in light of the magnitude of the [] infringement as well as the [] lack of response to plaintiffs' motion"); *Energizer Brands, LLC v. Camelion Battery Co.*, No. 16 CV 4368, 2017 WL 6813689, at *1 (N.D. Ill. Oct. 10, 2017) (granting summary judgment for willful copyright infringement where, as here, the defendant failed to respond to request for admissions[1] or the Local Rule 56.1 statement of facts).

---

[1] Plaintiffs flagged Defendants' deemed admissions in its Motion (Dkt. 19-1 at 1) and defendants did not address it in their Response. "Defendants have waived any argument against enforcing Rule 36 as written." *DISH Network L.L.C. v. Ellas TV, Inc.*, No. 16CV4813, 2018 WL 1252108, at *5, n10 (N.D. Ill. Mar. 12, 2018).

### 3. Defendants Failed to Create a Genuine Issue of Material Fact that Damages are Excessive and Unjustified

Defendants failed to create a genuine issue of material fact that Defendants made at least 9,901 sales of the Services knowing that the Services distributed Plaintiffs' Channels by circumventing Plaintiffs' security measures. (SUMF 19, 22, 28[2]; *see* Dkt. 37 at 3.) Defendants also failed to create a genuine issue of material fact on Defendants' 4,121 sales of the Services that took place after Plaintiffs sent their cease and desist letters. (SUMF 31-33; *see* Dkt. 37 at 3.) Finally, Defendants failed to provide any evidence such as their profits from the sale of the Services or their assets to support their argument that a statutory damage award of $24,752,500 would be punitive or unfair. (*See* Dkt. 37 at 3.)

The Seventh Circuit has held district courts "are accorded wide and almost exclusive discretion in determining the size of the statutory damage award" and are "not required to follow any rigid formula." *Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991); *Broadcast Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 489 (7th Cir. 1995); *see also Broad. Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 963 (N.D. Ill. 1985) ("Within the statutory bounds, the amount of damages is within the court's discretion."); *Flava Works, Inc. v. Does 1-293*, No. 12 C 7869, 2016 WL 11943006, at *1 (N.D. Ill. May 11, 2016) (quoting *Broadcast Music, Inc. v. Star Amusements, Inc.* for "[t]he district court is accorded wide and almost exclusive discretion in determining the size of the statutory damage award."); *Bartels v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 23 C 3755, 2024 WL 1363579, at *4 (N.D. Ill. Mar. 29, 2024) (citing *Chi–Boy Music* and stating "[w]hen determining an award of statutory damages, the court is not required to follow any rigid formula.") "Thus, the court in its discretion may consider factors including, 'the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to

---

[2] *See* Dkt. 19-7, Ex. 1 RFA 91, 98, 105, 112, 119, 126, 133, 140, 147, 154, 161, 168, 175, 182, 189, 196, 203, 210, 217, 219, 221, 223, 225, 227; Ex. 2 at RFA 84, 91, 98, 105, 112, 119, 126, 133, 140, 147, 154, 161, 168, 175, 182, 189, 196, 203, 210, 212, 214, 216, 218, 220 ("Admit that at the time the IPTV Services began distributing the [Plaintiffs' Channels], you knew Sling was the source of that channel.")

future copyright infringements.'" *Bartels*, 2024 WL 1363579, at *4 (quoting *Chi–Boy Music)*. The Seventh Circuit has also held that "when the infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations." *Chi–Boy Music*, 930 F.2d at 1229-1230 (upholding the district court's award of three times the amount due under the licensing fees).

Defendants failed to respond to any of Plaintiffs' discovery and failed to produce a single document despite the Court's "unambiguous command" to do so.[3] (Dkt. 34, 38, 41.) As a result, Plaintiffs' do not know the full extent of Defendants' violations, profits from the sale of the Services, or Defendants' assets. Defendants' total revenues were at least $1,122,615.25, including at least $798,641 from the 9,901 sales of the Services. (Dkt. 19-6 ¶¶ 10-11, 13-14; Dkt. 19-7 at 1316, 1331; SUMF 19.)

In considering the amount of statutory damages to be awarded, the Court should consider that Plaintiffs do not sublicense its distribution rights in the Channels. (Gedeon Suppl. Declaration ¶ 10.) The only legal way for consumers of Defendants' 9,901 sales of the Services to have acquired Plaintiffs' internet transmissions of the Channels would be to have purchased Sling subscription packages. It would cost a consumer $99.98 per month to subscribe to Plaintiffs' Sling service and receive all the Channels sourced from Plaintiffs' internet transmissions that were distributed on Defendants' Services. (*Id.* ¶¶ 7-9; SUMF 22.) Defendants made at least 9,901 sales of the Services, including test, one-month, two-month, three-month, six-month, one-year, two-year, and three-year subscriptions. (SUMF 19; Dkt. 19-6 ¶ 11.) Each of Defendants' sales of the Services averaged $80.66 ($798,641 / 9,901). (*Id.*; Dkt. 19-6 ¶¶ 11, 14; Dkt. 19-7 at 1316, 1331.) Defendants sold the Services for approximately $10 per month. (Dkt. 19-6 ¶ 11.) Thus, the average length of each of Defendants' 9,901 sales of the Services is approximately eight-months. ($80.66 / $10). Therefore the base cost to have purchased Plaintiffs' internet transmissions of the Channels legitimately for consumers of Defendants' 9,901 sales of the Services with an average subscription

---

[3] Plaintiffs request that the Court grant Plaintiffs' fully briefed motion for summary judgment in lieu of default sanctions, but the attorneys' fee award is still appropriate. (See Dkts.

of 8 months would have been $7,919,215.84 (9,901 x $99.98 per month x 8 months). *See DISH Network L.L.C. v. Ellas TV, Inc.*, No. 16CV4813, 2018 WL 1252108, at *6 (N.D. Ill. Mar. 12, 2018) ("Based on the amount that should have been paid to Dish for the 2,300 customers' five months of access, and the willfulness of the five monthly violations, I find the maximum penalty for each willful violation, a total of $500,000, is appropriate" for violations of the Federal Communications Act, 47 U.S.C. § 605(a).)

The Court should exercise its discretion and award maximum statutory damages of $24,752,500 (9,901 violations x $2,500) for Defendants' knowing and willful violations of the DMCA.[4] *See id.*; *Chi–Boy Music*, 930 F.2d at 1229–30 (upholding the district court's award of three times the amount due under the licensing fees and finding that "when the infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations"); 17 U.S.C. § 1203(c)(3)(A).

### 4. Defendants Failed to Create a Genuine Issue of Material Fact that the Requested Permanent Injunction is Overbroad

Defendants fail to create a genuine issue of material fact or provide any law in support of their assertion that the requested injunction would preclude Defendants' lawful business operations, is punitive, or not narrowly tailored to address Defendants' violations of the DMCA. (Dkt. 37 at 3.) The permanent injunction requested by Plaintiffs tracks the sections of the DMCA that Defendants have violated, 17 U.S.C. §§ 1201(a)(2) and 1201 (b)(1). Accordingly, Plaintiffs request that Defendants be permanently enjoined from violating the DMCA, 17 U.S.C. §§ 1201(a)(2) and 1201 (b)(1) as follows:

> Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with them that receives actual notice of the order, are enjoined from manufacturing, offering to the public, providing, or otherwise trafficking in set-top boxes, service subscriptions, or any other technology, product, service, device, component, or part thereof, that: (i) is primarily designed or produced for circumventing any digital rights management ("DRM") technology

---

[4] $7,919,215.84 base cost of Sling subscriptions for Defendants' 9,901 sales of the Services x 3 for willfulness = $23,757,647.52; $24,752,500 maximum statutory damages award = 3.1256 times base cost for willfulness ($24,752,500 / $7,919,215.84)

or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work; (ii) has at best only limited commercially significant purpose or use other than circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work; or (iii) is marketed for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work.

**III.    Conclusion**

For the foregoing reasons and those stated in Plaintiffs' Motion, Plaintiffs respectfully request that the Court enter summary judgment against Defendants on Count I and Count II of Plaintiffs' Complaint for 9,901 violations of the DMCA, 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1), finding Defendants' violations were willful, awarding Plaintiffs $24,752,500 in statutory damages using $2,500 per violation, and permanently enjoining Defendants as set forth above.

Dated: February 12, 2025                        Respectfully submitted,

                                                **HAGAN NOLL & BOYLE LLC**

                                                By: /s/ Stephen M. Ferguson
                                                    Stephen M. Ferguson (*pro hac vice*)
                                                    820 Gessner, Suite 940
                                                    Houston, TX 77024
                                                    (713) 343-0478
                                                    (713) 758-0146 (Fax)
                                                    stephen.ferguson@hnbllc.com

                                                    David M. Lewin
                                                    **LEWIN VERVENIOTIS LAW GROUP**
                                                    120 North LaSalle, Suite 2600
                                                    Chicago, IL 60602
                                                    Telephone: (312) 725-2084
                                                    dml@lewver.com

                                                    Attorneys for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.