UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., *et al.*,<br>Plaintiffs<br><br>v.<br><br>MAULIK SHAH, *et al.*,<br>Defendants | No. 24 CV 4745<br><br>Judge Jeremy C. Daniel |

### ORDER

The plaintiffs' Motion for Summary Judgment [19] is granted and the plaintiffs are awarded $24,752,000 in statutory damages. The Court enters a permanent injunction as follows: the defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with them that receives actual notice of the order in this action are hereby enjoined from manufacturing, developing, importing, offering to the public (including, but not limited to, through internet websites or auctions), promoting, distributing, providing or otherwise trafficking in set-top boxes or other devices, and streaming television services such as IPTV, which allow or are primarily designed or produced for the purpose of either allowing the viewing of the plaintiffs' copyrighted channels without authorization, or the circumvention of the plaintiffs' digital rights management. The entry of summary judgment moots the Magistrate Judge's Report and Recommendation [41] that a default judgment be entered against the defendants, though the Court adopts the Magistrate Judge's factual findings.

### STATEMENT

This matter comes before the Court on the plaintiffs DISH Network L.L.C.'s and Sling TV, LLC's Motion for Summary Judgment, [19], and the Magistrate Judge's Report and Recommendation that a default judgment be entered in the plaintiff's favor, [41].

The plaintiffs sued the defendants for violating the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1). The defendants, Maulik Shah and Manc. Inc., are alleged to sell set-top boxes ("STB") and streaming television services

("IPTV") which allow users to watch copyrighted content provided by the plaintiffs without subscribing to the plaintiffs' services. (R. 1 ¶¶ 10–20.)[1]

As the Magistrate Judge accurately put it in his Report and Recommendation, the defendants have "'ghosted' both opposing counsel and this court." (R. 41 at 1.) The defendants have not participated in this matter in any meaningful fashion. The Court will not repeat the Magistrate Judge's detailed timeline documenting the defendants' failure to appear in Court, file papers which comply with local rules, or respond to discovery, (*id.* at 2–4), but will reference it as necessary in this order. The Court accepts the Magistrate Judge's summary of events as true, both because it is correct and because the defendants have waived any objection to the Report and Recommendation by not filing a timely reply. (*Id.* at 5 (warning the parties that "failure to object under [Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)] waives the right to contest a magistrate judge's conclusions, both factual and legal.").) The Magistrate Judge recommends an entry of default judgment against the defendants. (*Id.*) However, the Court instead rules on the pending Motion for Summary Judgment filed by the plaintiffs (R. 19).

The plaintiffs allege the following facts, all of which are deemed admitted.[2] The plaintiffs are businesses that broadcast copyrighted television channels to millions of paying subscribers. (R. 19-2 ¶¶ 1–5.) The plaintiffs license these channels from their original rights-holders. (*Id.*) The channels are protected from unauthorized viewing and copying by key-based digital rights management ("DRM"). (*Id.* ¶¶ 6–7.) In other words, the channels are broadcast in scrambled form, and only paying subscribers have the ability to unscramble and view the channels. (*Id.*)

Shah is the sole officer and director of Manc, Inc., an Illinois corporation. (*Id.* ¶¶ 8–11.) Together, these defendants sell STBs and IPTV services allowing users to watch

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] The defendants failed to respond to the plaintiffs' Requests for Admission ("RFAs"), despite numerous attempts by the plaintiffs to confer with the defendants on their outstanding discovery obligations. (R. 41 at 2–3.) The RFAs are therefore deemed admitted. Fed. R. Civ. P. 36(a)(3). Likewise, the defendants failed to respond to the plaintiffs' Rule 56.1 Statement of Facts, as required by Local Rule 56.1(b)(2). The defendants' Opposition contains no identification of disputed facts and argues only that the plaintiffs have not met their burden of proof. (R. 37.) As such, the Court deems every fact in the plaintiffs' Rule 56.1 Statement admitted. *See* L.R. 56.1(e)(3) (failure to properly contest an asserted fact during summary judgment briefing may result in that fact being deemed admitted); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law . . . district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.").

the plaintiffs' channels, despite not being authorized to do so. (*Id.* ¶¶ 16–23.) The defendants knew they were unlawfully rebroadcasting plaintiffs' copyrighted channels, yet continued to do so after receiving cease and desist letters in June and July of 2023. (*Id.* ¶¶ 28–32.) Purchasers of the STBs received three months of free IPTV and assistance from the defendants setting up IPTV services. (*Id.* ¶¶ 17–21.) The defendants sold a total of 9901 IPTV services. (*Id.* ¶ 19.)

The DMCA, § 1201(a)(2), prohibits the "manufactur[ing], import[ing], offer[ing] to the public, provid[ing], or otherwise traffic[ing]" a "technology, product, service, device, component or part thereof" that "is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title" and "has only limited commercially significant purpose or use" outside of this circumvention, or is marketed for that purpose. Section 1201(b)(1) extends this ban to any "technology, product, service, device, component or part thereof" with a primary design or purpose of circumventing a "technological measure that effectively protects a right of a copyright owner." Section 1203(b)(1) allows the Court to enter "permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation" of sections 1201 or 1202.

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, a court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and [] draw all reasonable inferences from that evidence in that party's favor." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019) (citation and quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004).

The undisputed facts entitle the plaintiffs to summary judgment. The defendants provide the IPTV service, which exists for the sole purpose of circumventing the DRM on the plaintiffs' channels. This DRM protects the channels and the rights-holders who license the channels to the plaintiffs. Therefore, the defendants violated 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1) by providing IPTV services. The defendants made 9901 sales of IPTV services. For each sale, the plaintiffs seek statutory damages of $2,500. (R. 19 at 9.) This is the maximum amount of statutory damages available per violation, 17 U.S.C. §1203(c)(3), and the Court sees good reason to award the maximum amount here. The Court has wide discretion to award statutory damages and may consider factors, such as the circumstances of infringement and the need to deter future infringement. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Here, the defendants' business model is based entirely on copyright infringement, and the Court thus concludes that the infringement was willful. The defendants knew that they were violating the plaintiffs' copyrights, continued to infringe after receiving multiple cease and desist letters, and have simply refused to

meaningfully participate in this litigation—in short, they have demonstrated complete disregard for the law. In these circumstances, the maximum available damages award is entirely appropriate. The Court therefore awards the plaintiffs $24,752,000 in statutory damages.

On these same facts, a permanent injunction is also justified. Obtaining a permanent injunction requires a showing of four factors: (1) irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiffs and defendants favors an injunction; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Here, the plaintiffs have suffered an irreparable injury because the defendants' infringement deprives the plaintiffs of control over who may access their channels, depriving them of an uncertain amount of income and harming their reputation with licensors. (R. 19-2 ¶¶ 34–35.) Given the defendants' disregard for the law and this Court, the Court is not convinced damages alone will alter their behavior. And, because the defendants' business model is based entirely on willful infringement, the balance of hardships favors an injunction. *See Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1333–34 (7th Cir. 1977) (applying the principle to trademark infringement); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (citing *Helene Curtis* and applying the principle to copyrights). The same logic dictates that the public interest is not disserved by an injunction. *See Classic Lawn Ornaments, Inc.*, 843 F.2d 612. Accordingly, the *eBay* analysis favors the entry of an injunction in this case, which is detailed above.

Date: April 17, 2025

JEREMY C. DANIEL
United States District Judge

4